# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONNA L. GRIZZLE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>OKLAHOMA DEPARTMENT )<br>OF VETERANS AFFAIRS, )<br>)<br>Defendant. ) | Case No. CIV-06-210-SPS |

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

This is an action by the Plaintiff Donna Grizzle against the Oklahoma Department of Veterans Affairs (the "ODVA") pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 - § 624 (the "ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e - § 2000e-16 ("Title VII"). The Plaintiff claims she was denied a promotion at the Talihina Veterans Center in favor of a younger employee. The ODVA filed a Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 30], asserting it is immune from suit under the Eleventh Amendment to the United States Constitution. The Court finds that the ODVA is immune from suit and accordingly dismisses the above-styled action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

The Eleventh Amendment prohibits nonconsenting states from being sued by private individuals in federal court, *see Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."), unless the

Congress has validly abrogated the immunity or the state has waived its sovereign immunity and consented to suit. *See College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 670 (1999) ("[W]e have recognized only two circumstances in which an individual may sue a State. First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment . . . Second, a state may waive its sovereign immunity by consenting to suit.") [citations omitted]. A state agency such as the ODVA (as distinguished from a political subdivision) is also protected by the state's sovereign immunity. *See ANR Pipeline Co. V. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998) ("Applying this notion of sovereign immunity, the Court has held that a citizens suit against a state agency is barred by the Eleventh Amendment just as surely as if the suit had named the state itself."), *citing Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984). *See also Regents of the University of California v. Doe*, 519 U.S. 425, 429 (1997) ("It has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). In this circuit (and in most others), the issue of immunity under the Eleventh Amendment is considered to be jurisdictional, *i. e.*, the Court would be without authority to entertain the case if the ODVA is immune. *See Fent v. Oklahoma Water Resources Board*, 235 F.3d 553, 558 (10th Cir. 2000) ("On the other hand, we have held that 'the State's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, [so] the issue must be resolved before a court may address the merits.'"), *quoting Martin v. Kansas*,

190 F.3d 1120, 1126 (10th Cir. 1999), *overruled on other grounds by Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001). *But see Wisconsin Department of Corrections v. Schacht*, 524 U.S. 381, 391 (1998) ("Even making the assumption that Eleventh Amendment immunity is a matter of subject–matter jurisdiction-a question we have not decided-we reject respondent's argument[.]").

The Plaintiff argues that the ODVA is not immune from suit herein for two reasons: (i) Congress abrogated the states' Eleventh Amendment immunity by amending the ADEA to make it applicable to the states; and, (ii) the State of Oklahoma waived its sovereign immunity and consented be sued herein. Neither argument has merit.

Initially, it is clear that Congress did not validly abrogate the states' Eleventh Amendment immunity by amending the ADEA to make it applicable to the states. *See Kimel v. Florida Board of Regents*, 528 U.S. 62, 91 (2000) ("Congress did not validly abrogate the States' sovereign immunity to suit by private individuals."). In *Kimel*, the Supreme Court found that making the ADEA applicable to the states was a disproportionate remedy for any perceived constitutional violations and concluded that the ADEA was not "appropriate legislation" under the enforcement authority granted to Congress by Section 5 of the Fourteenth Amendment. *Id.* at 82-83 ("[W]e conclude that the ADEA is not 'appropriate legislation' under § 5 of the Fourteenth Amendment. Initially, the substantive requirements the ADEA imposes on state and local governments are disproportionate to any unconstitutional conduct that conceivably could be targeted by the Act.").

The Plaintiff responds to *Kimel* with *United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 163 L.Ed. 2d 650 (2006), wherein the Supreme Court considered congressional abrogation of sovereign immunity under Section 5 of the Fourteenth Amendment in the context of Title II of the Americans with Disabilities Act of 1990, § 12131 - § 12165 ("Title II of the ADA"). The Supreme Court distinguished a number of its previous abrogation cases (including *Kimel*), which it found were *not* based "on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment[,]" 127 S. Ct. at 881, and concluded that "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 882. The Supreme Court remanded the case to the lower courts and directed them to consider abrogation under Section 5 of Fourteenth Amendment on a "claim-by-claim basis[.]" *Id.*

The Plaintiff argues *Kimel* is not controlling because the claimants in that case "raised nonconstitutional disparate-impact challenges to the State's age-related policies[.]" *United States v. Georgia,* 127 S. Ct. at 881. She contends *United States v. Georgia* is controlling because her claims are based on conduct that independently violates the provisions of Section 1 of the Fourteenth Amendment, *i. e.*, the Equal Protection Clause. A review of the amended complaint would suggest otherwise; the Plaintiff does not, for example, allege that she was denied a promotion because of her age, and that classification by age bears no rational relation to a permissible state goal. *See, e. g., Kimel,* 528 U.S. at 83-84 ("States may discriminate on the basis of age without offending the Fourteenth Amendment if the age

classification in question is rationally related to a legitimate state interest. The rationality commanded by the Equal Protection Clause does not require States to match age distinctions and the legitimate interests they serve with razorlike precision. As we have explained, when conducting rational basis review 'we will not overturn such [government action] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational.'"), *quoting Vance v. Bradley,* 440 U.S. 93, 97 (1979). Instead, the Plaintiff's allegations are couched in the familiar language of a *prima facie* case under the ADEA, *i. e.*, she alleges she was qualified for the promotion, but it was given to someone younger. *See, e. g., Furr v. AT&T Technologies, Inc.,* 824 F.2d 1537, 1542 (10th Cir. 1987) (in order to establish a *prima facie* case of discriminatory failure to promote under the ADEA, a "plaintiff must show that he (1) was within the protected age group at the time of the failure to promote; (2) was qualified for promotion; (3) was not promoted; and (4) was passed over for an available promotion in favor of someone younger."). But in any event, the critical distinction between *Kimel* and *United States v. Georgia* is not whether the underlying claims can be characterized as purely constitutional.

In essence, the Plaintiff argues that "Title II" may be replaced by "the ADEA" in the Supreme Court's pronouncement in *United States v. Georgia*: "Thus, insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 127 S. Ct. at 882. This is tempting given the Supreme Court's observation that "no one

doubts that § 5 grants Congress the power to 'enforce . . . the provisions' of the [Fourteenth] Amendment by creating private remedies against the States for actual violations of those provisions." *Id.* at 881. But it is nevertheless clear that the ADEA and Title II of the ADA are not so interchangeable. First, the Supreme Court found prior to *United States v. Georgia* that Title II's abrogation of sovereign immunity was an appropriate legislative response to a "history and pattern of unequal treatment" against the disabled by the states. *Tennessee v. Lane,* 541 U.S. 509, 524-530 (2004). By contrast, the Supreme Court found no such pattern in *Kimel* with regard to age discrimination by the states. 528 U.S. at 89 ("Congress never identified any pattern of age discrimination by the States, much less any discrimination whatsoever that rose to the level of constitutional violation. The evidence compiled by petitioners to demonstrate such attention by Congress to age discrimination by the States falls well short of the mark."). *See also Garrett,* 531 U.S. at 374 ("Congress is the final authority as to desirable public policy, but in order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment[.]"). Second, although Congress clearly *could* abrogate sovereign immunity and allow private actions against the states for violations of the Equal Protection Clause, *see, e. g., Fitzpatrick v. Bitzer,* 427 U.S. 445, 456 (1976) ("We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts."), that is not what Congress intended to do by making the ADEA applicable to the states. On the contrary, the

Supreme Court found that Congress chose to make the ADEA applicable to the states in order to heighten judicial scrutiny of age discrimination from the "rational basis" analysis applicable to equal protection claims generally. 528 U.S. at 83-88. *See also Garrett,* 531 U.S. at 374 ("[T]o uphold [Title I of the ADA's] application to the States would allow Congress to rewrite the Fourteenth Amendment law laid down by this Court in [*City of Cleburne, Tex. v. Cleburne Living Center, Inc.,* 473 U.S. 432 (1985)]."). Such remedial legislation is beyond Congress' enforcement authority under Section 5 of the Fourteenth Amendment. *See City of Boerne v. Flores,* 521 U.S. 507, 519 (1997) ("The design of the Amendment and the text of § 5 are inconsistent with the suggestion that Congress has the power to decree the substance of the Fourteenth Amendment's restrictions on the States. . . Congress does not enforce a constitutional right by changing what the right is. It has been given the power 'to enforce,' not the power to determine what constitutes a constitutional violation.").[1]

---

[1] The law in this circuit is that the ADEA preempts equal protection claims based on age discrimination under 42 U.S.C. § 1983. *See Migneault v. Peck,* 158 F.3d 1131, 1140 (10th Cir. 1998), *vacated on other grounds sub nom. Board of Regents of University of New Mexico v. Migneault,* 528 U.S. 1110 (2000). *But see Holmes v. Regents of University of Colorado,* 1999 WL 285826, at *8 (10th Cir. May 7, 1999) ("Generally speaking, instances of race discrimination and possibly age discrimination may violate the Fourteenth Amendment right to equal protection of the laws and trigger a § 1983 claim.") [unpublished opinion], *citing Buckley v. Coyle Public School System,* 476 F.2d 92, 97 (10th Cir. 1973). But even if the Plaintiff could bring such a claim, for example, against a state actor in an individual capacity, the ODVA would nevertheless be immune under the Eleventh Amendment. *See Will v. Michigan Department of State Police,* 491 U.S. 58, 67 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent.").

In summary, the Court finds that *Kimel* is controlling and that its impact has not been altered by *United States v. Georgia*.[2] The immunity afforded to the ODVA as an arm of the State of Oklahoma has not been validly abrogated by enactment of the ADEA, and the Plaintiff's argument to the contrary is accordingly without merit.[3]

The Plaintiff also contends the State of Oklahoma has waived sovereign immunity and consented to be sued herein. She makes three arguments in support of this contention. The first would appear to be a classical syllogism: Oklahoma law reflects that public employees should have the same rights *vis-à-vis* employment discrimination as private employees;

---

[2] There is nothing in *United States v. Georgia* or *Lane* that suggests that the Supreme Court's approach to Title II of the ADA might be applicable to the ADEA or that a rethinking of *Kimel* might otherwise be required. Furthermore, the Court is unaware of any court that has applied the analysis in *United States v. Georgia* and *Lane* to the ADEA or to any other statute found by the Supreme Court to be an invalid abrogation of sovereign immunity pursuant to Section 5 of the Fourteenth Amendment. *See, e. g., Board of Trustees of University of Alabama v. Garrett,* 531 U.S. 356 (2001) (Title I of the ADA was not "appropriate legislation" under Section 5 of the Fourteenth Amendment and therefore did not validly abrogate the states' Eleventh Amendment immunity); *Florida Prepaid Postsecondary Education Expense Board v. College Savings Bank,* 527 U.S. 627 (1999) (amendment to Patent and Plant Variety Protection Remedy Clarification Act to make it applicable to the states was not "appropriate legislation" under Section 5 of the Fourteenth Amendment and therefore did not validly abrogate Eleventh Amendment immunity); *City of Boerne v. Flores,* 521 U.S. 507 (1997) (Religious Freedom Restoration Act was not "appropriate legislation" under Section 5 of the Fourteenth Amendment and therefore did not validly abrogate the states' Eleventh Amendment immunity). On the contrary, the only statute to which the lower courts *have* applied the analysis in *United States v. Georgia* and *Lane* is Title II of the ADA. *See, e. g., Guttman v. Kahlsa,* 446 F.3d 1027, 1030, 1034-36 (10th Cir. 2006), *overruling Thompson v. Colorado,* 278 F.3d 1020, 1034 (10th Cir. 2001) ("Thus, Title II is not a valid abrogation of the states' Eleventh Amendment immunity.").

[3] The Plaintiff also argues that Title VII is a valid abrogation of Eleventh Amendment immunity under Section 5 of the Fourteenth Amendment. *See, e. g., Fitzpatrick v. Bitzer,* 427 U.S. 445, 456 (1976). But although the Plaintiff *purports* to raise a Title VII claim in the amended complaint, it is clear that her allegations raise only a claim under the ADEA, *i. e.*, she does not allege discrimination based on race, color, religion, sex, or national origin, the attributes protected by Title VII. *See, e. g., EEOC v. Flasher, Co., Inc.*, 986 F.2d 1312, 1316 n. 4 (10th Cir. 1992) ("Discrimination based upon other characteristics or factors is not prohibited by Title VII.").

private employees can sue their employer for violations of federal law in federal court; therefore, public employees can sue their employer (*i. e.*, the State of Oklahoma) for violations of federal law in federal court. However, "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here. In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673 (1974), *quoting Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171 (1909). Further, a waiver of Eleventh Amendment immunity cannot be implied from the existence of similar remedies under state law. *See Kimel*, 528 U.S. at 91 (Eleventh Amendment immunity bars ADEA claims but "[s]tate employees are protected by state age discrimination statutes, and may recover money damages from their state employers, in almost every State of the Union."). Finally, the State of Oklahoma has expressly denied any intent to waive its Eleventh Amendment immunity. *See* 51 Okla. Stat. § 152.1(B) ("[I]t is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.").

The Plaintiff next argues that the ODVA waived its sovereign immunity by failing to object to the forum in which she lodged her administrative complaint. Specifically, the Plaintiff contends that her administrative complaint should have been filed with the Oklahoma Merit Protection Commission (the "OMPC"), and that the ODVA should have objected when she filed it with the Equal Employment Opportunity Commission (the

"EEOC") instead. According to the Plaintiff, the ODVA waived sovereign immunity by failing to object before the EEOC issued a right-to-sue letter. This argument is patently absurd. The issuance of a right-to-sue letter has nothing to do with the question of sovereign immunity. *Cf. Stewart v. Oklahoma,* 292 F.3d 1257, 1259 (10th Cir. 2002), *cert. denied,* 537 U.S. 1104 (2003) ("We are not convinced that when Congress amended Title VII it hitched the abrogation of the states' immunity to a requirement that the Attorney General issue aggrieved employees right-to-sue letters. The text of Title VII . . . does not even refer to the requirement that a plaintiff obtain such a letter."). *See also Hiller v. Oklahoma ex rel. Used Motor Vehicle & Parts Commission,* 327 F.3d 1247, 1249 n. 2 (10th Cir. 2003) (quoting *Stewart*). In any event, the ODVA was not even a party to the EEOC proceedings; at that time the Plaintiff was pursuing the United States Department of Veterans Affairs. *See* Docket Nos. 2, 20 & 21. Inasmuch as a waiver of sovereign immunity can be found "only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction[,]'" *Edelman,* 415 U.S. at 673, *quoting Murray,* 213 U.S. at 171, the ODVA cannot be found to have waived immunity by failing to object to proceedings to which it was not a party.

Finally, the Plaintiff suggests that the ODVA may have waived its sovereign immunity by accepting federal funding. However, as the Plaintiff herself notes, "[t]he mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal courts." *Edelman*, 415 U.S. at 673.

Further, although Congress *can* condition receipt of federal funds on a waiver of sovereign immunity, *see, e. g., College Savings*, 527 U.S. at 686 ("[I]n the exercise of its spending power, [Congress may] condition its grant of funds to the States upon their taking certain actions that [it otherwise] could not require them to take."), it has not done so in connection with the ADEA. *See Tyrrell v. City of Scranton*, 134 F. Supp. 2d 373, 381 (M.D. Pa. 2001) (analyzing the Civil Rights Remedies Equalization Act, 42 U.S.C. § 2000d-7(a)(1) and its relation to the ADEA).

In summary, there is neither a valid Congressional abrogation of Eleventh Amendment immunity nor a waiver of sovereign immunity by the State of Oklahoma in connection with the Plaintiff's claims herein under the ADEA. The ODVA is therefore immune to suit under the Eleventh Amendment, and the Court therefore lacks subject matter jurisdiction of the Plaintiff's claims under the ADEA. Accordingly, IT IS HEREBY ORDERED that the Defendant's Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 30] is GRANTED pursuant to Fed. R. Civ. P. 12(b)(1).

**IT IS SO ORDERED** this 2nd day of November, 2006.

                        **Steven P. Shreder**
                        **UNITED STATES MAGISTRATE JUDGE**